Mr. Choulat's sentence for being a felon in possession of a firearm was enhanced because it was the district court found that he possessed that firearm in furtherance of a drug trafficking felony. The district court's decision was error for two reasons. First, the evidence was insufficient to support the conclusion that Mr. Choulat was engaged in a drug trafficking offense. I see the timer hasn't started. Thank you. I didn't want to get lost. You get a bonus. It was going to distract me. Anyways, the evidence was insufficient to show that he engaged in a drug There, the court dealt with a person who had 5.5 grams of methamphetamine and 3.4 grams of Adderall. The court found that the fish was only recently deceased. Here, Mr. Choulat... An eminent panel has included me and Judge Engelhardt. Yes, Your Honor. That's why I decided to focus on him. Here, Mr. Choulat had even fewer, suggesting that the fish had been deceased quite a longer time. He had 4 grams of methamphetamine and 4.5 grams of marijuana. Also, as in Hughes, the things that Mr. Choulat possessed indicated that he was more of a consumer of narcotics than a distributor of them. For example, the grinder was used to prepare marijuana before you smoke it. And the government's going to point to the scale here. In other cases where the court has attached significance to a scale, there's been evidence that the scale had recent residue on it or that there were baggies used with the scale. The idea being that he would weigh the drugs before distributing them in those additional baggies. Here, there was no indication that Choulat had something to help him distribute the drugs, such as bags or things that he would use to cut drugs with. For those reasons, the evidence was insufficient to conclude that Mr. Choulat was engaged in drug trafficking. Also, sort of the circumstances of it, he often had the drugs in his pocket. The scale was in the glove compartment. The firearm was on the seat on the floorboard in front of the back seat. And for those reasons, Mr. Choulat would urge the court to find that there was not sufficient evidence to support the drug trafficking. The secondary that the district court engaged in was once it concluded that Mr. Choulat was trafficking in the narcotics, it applied the because the firearm and the drug trafficking were in close proximity that Mr. Choulat had, it was necessarily the case that the firearm was possessed in connection with the drug trafficking. Counsel, you're aware that we heard on Bonk v. Vargas case that's extensively discussed. Would you agree that the outcome of that case would be determinative on this issue? Yes, Your Honor. The outcome on that case would be at least highly probative of this issue. I think you would also have to accept my argument that 14b expands the application of 2k2.1 beyond what the guideline itself says. But I don't think that that's a hard leap to make, given that the guideline itself says in connection with which U.S. v. Condren tells us means that it has a causal connection or a logical connection. Whereas here, whereas once you get to the or expands on it by allowing only a spatial connection to satisfy. So yes, I do think Vargas will largely determine the outcome of that issue. But I guess to expand a little bit, assuming that Vargas does conclude that the Kizzer review applies to the guideline commentary, the analysis this court would in connection with is a ambiguous term. As I just argued, I don't think it is ambiguous. This court has interpreted it before and used the typical canons of statutory construction to interpret it. Then we look to whether the even if I were to lose that argument, and this court found it to be ambiguous, the next step would be to see if the commission's interpretation of it was reasonable because it does expand it as the third circuit is found in Pettus, it would not be reasonable. And then finally, whether it's a kind of interpretation that an agency rather than a court should normally engage in. The argument there is that this court and many courts are very well practiced in engaging in this sort of analysis as to whether a firearm is possessed in connection with another felony. The courts do that in a lot of other contexts. And so this court, the courts are the ones who are placed to engage in that sort of fact-intensive analysis as opposed to agency-created rules, which is reflected in the circuit splits that have come up even through the meaning of comment 14B, for example, in order to avoid finding that comment 14B was an unreasonable interpretation of the guideline, the third circuit in Pettus, the majority opinion interpreted it significantly different than this court has instead of finding as this court has that it the third circuit found that it created a rebuttable presumption. So the idea of an agency interpreting the regulation is to decrease the confusion that can arise here. Even the attempt at interpretation has failed to achieve that goal. So for that reason, it also is not a interpretive exercise that agencies are well equipped to resolve. If there are no further questions, those are the two arguments that Mr. Schillack has for error in this case. And you've saved time for a bubble. Thank you, sir. Valor. Good morning, Your Honors. May it please the Court. Charles Valor for the United States. I will briefly touch on the factual question of whether the evidence supports a finding of drug trafficking, and then I'll move on to the legal question of the effect of Kaiser versus Wilkie Hare. As to the question of drug trafficking, the district court adopted the PSR's finding that this defendant was engaged in drug trafficking. This panel need only find that that was a plausible finding. And on this record, it was. This court has repeatedly been willing to infer drug trafficking from the particular combination of circumstances we've got here, where we've got an individual with drugs on him, and in fact, multiple kinds of drugs. That's a common factor that this case has in common with Hughes that was discussed during Mr. O'Neill's argument. He's got drugs on him. He's got a gun on him. And it's not only the fact that he's got a gun on him, but it's the type of gun, the 9mm pistol, which is a common weapon of drug dealers, as well as the fact that, as the defendant admitted in the factual basis for his plea, it was readily accessible to him. Adding on top of that, it's the scale which this court has considered, additional paraphernalia. Mr. O'Neill noted the grinder. That could be potentially a use-type paraphernalia, but that factor, again, was in common with Hughes, where the defendant had a pipe. But overall... Let me ask you about the quantities. Are there any published Fifth Circuit cases that would support a finding of evidence of intent to distribute? I think in this case, it's 4 grams of methamphetamine and 0.16 ounces of marijuana. Do we have any ballpark on those amounts? I'll direct the court to United States v. Smith, 6F4573. It's an 841 case, so it's dealing with the charge of possession with intent to distribute. I don't recall the precise amounts, but the court there made the observation, as the court has in other cases, that even small quantities can support an inference of intent to distribute if they're combined with other evidence, like guns in proximity, scales in proximity. The totality of circumstances can support an inference. If you've got a large quantity, the quantity alone can support an inference. I'm not sure we're quite there in this case. I would say I don't know that this 4 grams of methamphetamine is necessarily a user-only quantity. I think it's kind of on the borderline, and just as a couple of relevant data points, I would note that you're just about 20 percent shy of what would be a five-year man-to-man quantity under 841. I don't think that's dispositive, but I think it's just sort of a relevant marker to the kind of quantity we're talking about here. But overall, I think this court can readily affirm the finding that this defendant was dealing drugs. Turning to, do you think we ought to read proximity against the backdrop that he had a now, you now know, he had a constitutional right to carry a non-methamphetamine pistol? Well, in other words, when you, instead of spatial proximity as distinguished and causal, as the Third Circuit has explained, the backdrop of this is that it's perfectly lawful for him to have that non-methamphetamine weapon. Now you say, well, that's a constitutional right, but if it gets in proximity to drugs, then it goes away. I just wondered if you had any thoughts about putting those concepts on the table. Well, for one, this defendant was convicted felon, so I don't think he had. I'm not so sure that he don't have a seal. I don't think anyone's held since Bruin that a convicted felon had, in fact, something like 120, 130 district court decisions have rejected that argument unanimously. So I don't. It's not an argument. You start with a constitutional premise and you start taking it and you add to it that he's a felon. I'm not sure in the history of it, we go to the reasonableness approach that we're going to find explanations, but I'm pulling from this. Well, certainly he didn't enjoy a constitutional right. I'm just pointing out some of the conundrums to where we're going. Understood, understood. Well, I don't think he enjoyed a constitutional right to possess illegal drugs. I don't suggest that. Once you start combining the factors, I understood. So moving on to the issue of Kaiser versus Wilkie, this court has basically 30, 29 years of unbroken precedent that would apply the other felony enhancement to the circumstances of this case. Assuming I'm right about the first point that he was in fact dealing drugs, there's 30 years of precedent that would apply the enhancement to a case like this from both before and after application no. 14 was adopted and nothing in Kaiser versus Wilkie disturbs that precedent for three reasons. One is the panel held in Vargas. That decision has now been vacated, but I do think for present purposes, pending a decision in that case, the Vargas panel was correct that whatever Kaiser held does not unequivocally apply to the guidelines. Second, even if Kaiser applies to the guidelines in the abstract, the Supreme Court there emphasized that it was not meaning to upset or disturb settled rule constructions. That was the very reason the court decided not to depart from Auer and Seminole Rock. The obvious question though is, I mean, you're making a perfectly fair presentation, but as a prudential matter, should we really wait for Vargas, an in-bank case that's been argued and will of course be decided in due course? I don't think the court needs to because my third point was going to be, I don't think the outcome is determined by deference to the note in this case. Like I said, there's a long line of precedent starting with the U.S. versus Condren decision going back to 1994. That basically, this is 12 years before the application note was adopted. That basically applies the exact same logic that the sentencing commission came along and applied in 2006 in the application note. And Condren, the court said that if somebody's dealing drugs, then it's reasonable to infer that that person knows other people know he has drugs and would be concerned about theft. And if that's the case, it's further reasonable to infer that if he's got a gun, he's got the gun near his drugs, then he's doing so to protect the drugs. And that's, again, that's the logic this court laid out correctly. I think it makes intuitive sense that if you've got, and I think it's important to step back and think about the statute that this enhancement's applying to, it's knowing possession. It's not. And what you responded by relying on the case law, what's your strongest and most recent case that would support that? So I think the problem, I agree that your recitation is fair as to the case law, but which one would you point to the most? I'd probably go to Anderson, U.S. versus Anderson from 2009, which is, we're fast forwarding to three years after application note 14 was adopted. And that case applies the enhancement to similar facts. It's someone who was found with a gun and there was evidence that he had just been reinforced this court's prior practice. So I think that's an observation that at least as far as this court's precedent goes, the note affirmed what the court had already been doing. The sentencing commission adopted essentially the logic from conjuring that this court had adopted 12 years earlier. So again, going back to the analysis in Kaiser, where the court said, we're not overruling our, we're not overruling Seminole Rock. And one of the reasons is that it would just cause a nightmare in admin law. We don't want to come along and upset decades worth of settled rule constructions. I think that logic applies here. And I, because we've got many, many cases following essentially the notes logic. And I think it's did in this particular case was reinforce what the court was already doing. And it would not necessarily be outcome determinative here. I will touch briefly on the question of say Vargas is decided tomorrow and holds that holds the Kaiser deference applies equally to the outcome of this case would still be the same. The court should affirm first because like I said, I think the note is not outcome determinative precedent from both before and after would support the enhancement here. But even if you had to tick through Kaiser's framework in this case, we believe it would be proper to defer to the sentencing commission's reading of its enhancement here. The first question under Kaiser is whether the note is genuinely ambiguous. This note was promulgated to resolve effectively a division among the circuits about how to interpret this language is the third circuit observed in the Perez decision from a year to a year or so ago. The in connection with languages is notable for its vagueness and pliability. It's just somewhat ambiguous language. So I do think it invites an interpretation by the commission. Turning to the question of whether this particular interpretation and application of 14B is within the zone of ambiguity, we believe it is a reasonable interpretation. The guideline requires in connection with and the first part of 14A simply adopts basically what courts have adopted as the standard for furtherance of or in relation to in the context of 924C, which as Mr. O'Neill noted, requires a causal or logical connection. And 14B is consistent with that by essentially outlining one particular factual scenario where it makes sense to infer just such a causal or logical connection. In this case, the defendant had a gun readily accessible as he admitted in the factual basis while he was drug dealing. So it makes all the sense in the world to just go straight down the chain of logical inferences that the sentencing commission contemplates as well as Condren, back in 1994, contemplated. It's the same logic and it's certainly a reasonable way to read this regulation. The Third Circuit posed this in the Perez case, which is the only post Kaiser case, by the way, dealing with this particular enhancement and how Kaiser might affect it, poses a sort of hypothetical scenario where somebody's dealing drugs and has a hunting rifle buried in the closet. So there's this proverbial accidental or coincidental possession of a gun in close proximity to drugs. I struggle with that a little bit because I think the Third Circuit is discounting the notion that the person, by definition, if we're talking about a 922 charge, knows the gun is there. So I think even if it is a hunting rifle buried in the closet, you might be able to infer, depending on the circumstances, that it's got at least the same amount of weight. Regardless, this case is not the hunting rifle buried in the closet case. There's no need to get into whether that satisfies the in connection with requirement. Certainly no application of the note to this case would be remotely unreasonable. So even under Kaiser, the government believes that the application of the enhancement was proper in this case. Thank you, Mr. Fowler. Mr. O'Neill? I'd like to start by providing a little bit of context to what was agreed to in the factual basis. The government relies heavily on the admission in the factual basis that Shallot had immediate access to the firearm. That was in the context of a sentence that reads like this from Record 79. As the driver and sole occupant of the vehicle, Shallot had immediate access to the firearm, and therefore exercised care, custody, and control of the firearm. In that context, the factual basis is really just establishing sole as opposed to joint possession. It doesn't do the work that the government wants it to of making it seem like the firearm was ready for there for him to grab it and defend any narcotics. The government also refers to United States v. Sharp, 6th of 4th, 573. I think that's very distinguishable from this case. There, there was a sufficiency of the evidence analysis about whether there was enough to conclude an intent to distribute. The defendant there had sent text messages as well as admitted on the stand to trading drugs for guns. So I think the argument here that I think this scenario is definitely lesser than Sharp and lesser than Hughes in showing an intent to distribute just based on what he had with him and the amount of drugs he had in his possession. Finally, the government says that Shallot is consistent, or not Shallot, that Condren and the comment 14B are consistent. I think this court has rejected that argument in United States v. Mitchell, 166 F3D 748 in 1999. This court wrote, quote, there is no conclusive presumption, either statutory or jurisprudential, that a connection exists automatically between guns and drugs. Comment 14B makes that connection, and therefore it expands on what this court had already found in Condren. Because it expands the text of the guideline, it is not deserving of deference. The district court erred by deferring to it, and Shallot would urge reversal in this case. Thank you. Thank you, Mr. Neal. Your case is under submission. We noticed that you're court appointed. We wish to thank you for your willingness to take the appointment and for your good work on behalf of your time. Thank you.